534                              MAY, 1887.


JOHN S. ELLENWOOD & another *vs.* GEORGE W. BURGESS
                         & others.

Middlesex.   March 17, 18. — May 12, 1887.   FIELD, C. ALLEN, & GARDNER,
                         JJ., absent.

If A., supposing that B. owns certain land, enters into a contract under seal with
    him to build a house on the land, to be paid for by three promissory notes of B.,
    and, before the contract is completed, ascertains that the land belongs to C.,
    and, being induced by fraudulent statements of C. as to B.'s financial·ability,
    completes the contract, all of the notes having been tendered and two of them
    accepted by A., he cannot then rescind the contract and maintain a petition
    against C. to enforce a mechanic's lien, under the Pub. Sts. c..191, on the ground
    of an implied contract on the part of C. coexistent with the contract with B.
If a person has furnished labor and materials, in the construction of a house, under
    an entire contract with a person not the owner of the land, and has given no
    notice to the owner of his intention to claim a lien for the materials, and cannot
    distinctly show what the labor was worth, he cannot enforce a mechanic's lien,
    under the Pub. Sts. c. 191, for either the materials or the labor.
A mechanic's lien cannot be enforced, under the Pub. Sts. c. 191, for the amount in
    which land has been enhanced in value by the labor and materials expended
    upon it by the petitioner.
If A., supposing that B. owns certain land, enters into a contract under seal with
    B. to build a house on the land, and, before the contract is completed, ascertains
    that the land belongs to C., and, being induced by the fraudulent statements of
    C. as to B.'s financial ability, completes the contract, A. cannot then rescind the
    contract and maintain a petition against C. to enforce a mechanic's lien, under
    the Pub. Sts. c. 191, to the prejudice of a person, who, in good faith and for a
    full consideration, has taken a mortgage of the land while the contract was
    in force.

PETITION, by John S. Ellenwood and Angus McDonald, co-
partners under the firm name of Ellenwood and McDonald,
against George W. Burgess, Paulinas F. Williams, and Re-
becca J. Cotton, to enforce a mechanic's lien, under the Pub.
Sts. c. 191. Rebecca J. Cotton appeared and filed an answer,
alleging that she was seised in fee and in mortgage of the
premises described in the petition; and that the mortgage was
antecedent to and took precedence of the alleged lien of the
petitioners. Trial in the Superior Court, without a jury, before
*Blodgett*, J., who reported the case for the determination of this
court, in substance as follows:

The land described in the petition was owned by Williams,
on May 26, 1884, when the written contract hereinafter referred

to was made between Burgess and the petitioners, and continued to be owned by him until after the work was completed, on October 22, 1884.

There was no agreement, oral or written, and no understanding between Williams and Burgess that Burgess had, on or before May 26, 1884, or should have thereafter, any interest in said land or in the building to be erected thereon, or in the money which might be received upon a mortgage or sale of said land and building, except such interest as would enable Burgess to convey the land in fee simple, or in fee and in mortgage.

At some time in the winter or spring of 1884, and before May 26, 1884, a scheme was devised between Burgess and Williams to procure the erection of a dwelling-house on said land, without subjecting the land to a lien, or Williams to personal liability; and, as a part of this scheme, Burgess, at the request of Williams and with his knowledge, made a written contract under seal with the petitioners, dated May 26, 1884, Williams being acquainted with all its terms, by which the petitioners agreed to build a house on the land for the sum of $2750, to be paid in three equal payments by the promissory notes of Burgess, each on four months' time.

The petitioners, believing that Burgess owned the land, and that, in making said contract, he was acting on his own account, proceeded under the contract to build the house, and about August 1, 1884, for the first payment, received the negotiable promissory note of Burgess, payable in four months after date. The petitioners, being unable to get this note discounted at the bank where they did business, thereupon stopped work upon the building and made inquiry and examination of the records of deeds through an attorney at law, to ascertain what interest Burgess had in the land, and learned that the record title was in Williams, and thereupon, with a creditor of theirs named Wood, went to see Williams, and he indorsed the note, and they transferred it to Wood. This note was paid at maturity by Williams.

Williams, at the time of indorsing the note, told them that he had sold the land to Burgess, but had not passed any deed, and that Burgess had paid him $1500 towards the land; that

he had offered to give Burgess a deed of the land, but Burgess told him to wait till he got the rest of his money; and that he considered Burgess perfectly responsible, and that the note would be- paid.

At about the same time, Williams stated to the attorney who had examined the records of deeds for the petitioners, in the presence of one of the petitioners, that " Burgess perhaps had not much ready money, but that he was a man perfectly sound financially, and that these notes would be made all right." These statements were untrue, and known by Williams to be so; and the judge found that they were made by Williams for the purpose of deceiving the petitioners, and that they were thereby deceived. Williams further said, " You can have your lien at any time, and I authorized that building to be built on there. I know the records show that the building is in my name, but I understood that the building was going up there, and you are perfectly safe in your lien."

Relying upon the representations of Williams that Burgess was all right and would pay, and that there was no trouble about the money, and also influenced by the recommendations of Wood so to do, the petitioners resumed work, and- continued to work, without a rescission of the written contract or notice to any one that they rescinded it or intended to abandon it, until the work was all completed, and the deed to Burgess and the mortgage hereinafter referred to were made. The building was completed on October 22, 1884.

On September 10, 1884, Burgess gave, and the petitioners received, his promissory note on four months' time, in payment of the second instalment of the contract price. This note they indorsed to a creditor, and it was not the property or under the control of the petitioners until they took it up after maturity and protest. It has never been paid by Burgess, and is now held by the petitioners, and, until the trial, was not offered to be returned to Burgess. At the trial it was offered to be returned.

The certificate of lien was filed on November 20, 1884, and the statement of account contained charges for a certain number of days' labor at a price named; a charge for " materials furnished upon said building;" and a charge for "putting water in

cellar." Credit was given in it for the first note, but not for the second.

When the work was completed, Burgess offered the petitioners his note for the unpaid instalment, as required by the written contract, but the petitioners refused to accept it.

There were required, under the contract, materials of various kinds, and they were furnished as required by the contract. No evidence was offered of their price or value, or of the amount or quality used, or of the amount or value of the labor furnished.

The petitioners knew, from the time the first note was given, which was early in August, 1884, that Burgess was not, and Williams was, the owner of the land, and continued furnishing the labor and materials without notifying Burgess or Williams that they rescinded the contract, or should not accept payment as therein provided, until the building was fully completed, and the deed and mortgage hereinafter referred to were delivered and recorded, and the money was advanced by the mortgagee.

On October 27, 1884, Williams executed a warranty deed to Burgess, and Burgess a mortgage to Rebecca J. Cotton, to secure the payment of three promissory notes signed by Burgess, amounting to $6000, which sum was at that time lent by her on said notes and mortgage in good faith, and without notice of the lien claimed by the petitioners. The negotiations for the mortgage were conducted by Williams, and he received the $6000 lent thereon, and, after the deed to Burgess and the mortgage to Cotton, the equity of redemption was understood and treated by Burgess and Williams as belonging to Williams.

The attorney by whom the certificate was drafted and filed, being the same attorney who had previously examined the records, was called as a witness by the petitioners, and testified that the petitioners, some ten to fourteen days before the lien was put on, gave him the facts upon which to draw the certificate and account, and that he went again and looked at the title, to see if there was any change in it; and, upon cross-examination, testified that he examined the records about ten days or two weeks before the certificate and account were filed, and that he could not state positively whether he knew of the making and recording of the mortgage to Cotton before he filed the certificate of lien, or not.

The deed to Burgess and the mortgage to Cotton were recorded on November 4, 1884, and the petitioners learned from their attorney that these conveyances had been made, but were unable to state when.

No other evidence was offered upon the question whether the petitioners or their attorney knew, or did not know, at the time of making and filing the certificate, who owned the land, or whom they supposed at that time to own the land. But, upon the evidence, the judge found that said attorney did not so know.

The petitioners were requested by Burgess to put in and furnish the material of a service pipe connecting the house with the main pipe in the street. The petitioners employed the city of Somerville to do this work and furnish the materials. The work was completed on or before June 18, 1884, and the petitioners paid said city therefor the sum of $41.72. There was no other evidence offered in regard to this matter.

The lot of land on which said house was built contained about four thousand eight hundred and seventy-five square feet of land, and was bought by Williams in 1881, and cost $3000. It remained unimproved until the erection of the house, and was thereafter rented by Williams for thirty dollars per month, and he received the rent until possession was taken by the mortgagee under the mortgage. When the deed and mortgage were given, and Williams collected the rent, Burgess was at all times in his debt.

The judge found, on the foregoing evidence and the facts hereinbefore stated, which are all that were put in bearing on the question, that the land was enhanced in value, by the labor and materials applied thereto by the petitioners, to the amount of $2791.72.

Each of the notes given or tendered by Burgess to the petitioners was for $934.32.

Burgess, in all his dealings with the petitioners, acted under the direction of Williams, and as his agent, and upon the promise of Williams that Burgess should have no financial annoyance in the matter; but the fact that Burgess was so acting was not known to the petitioners until the month of December, 1885, and was not known to the mortgagee at any time.

When the certificate was filed and the petition entered in court, the petitioners still relied upon the written contract.

Upon the foregoing facts and evidence, the judge found the lien of the petitioners established as against all the respondents; and that the amount due the petitioners, for which they had such lien, was $1875.72, with interest thereon from December 11, 1884.

If the above rulings were right, judgment was to be entered on the above finding, and an order of sale to issue; otherwise, judgment for the respondents, and the petition to be dismissed.

W. S. Stearns, for the respondents.

G. W. Estabrook, for Cotton.

W. Schofield, for the petitioners.

DEVENS, J. The petitioners made a contract under seal, with the respondent Burgess, which must be interpreted as a waiver of any lien upon the land. It contemplated a payment by three promissory notes, all of which had been tendered to them before they undertook to rescind the contract, and two of which they had actually accepted before filing the certificate to enforce a lien. The petitioners became apprehensive of the responsibility of Burgess at the time of receiving the first note from him, but were reassured upon this point by Williams, and thereafter, although fully aware that the land was not the property of Burgess, continued in the performance of their contract with him until it was fully completed by them.

They contend that, although an express contract under seal was made with Burgess, the law will imply a coexistent contract with Williams as the owner of the land, which began to be performed as soon as the work was begun, and the amount due on which became payable when it was finished. They further contend, that they had the right to elect to abandon their claim against Burgess, and rescind their contract with him, after discovering the fraudulent conduct of Williams, and after they had filed their certificate for a lien, and the statement, which purported to be a just and true account of what was due them, and thereafter to pursue their remedy against Williams by the enforcement of a lien, the amount of which should be determined by the increased value of the land of Williams due to the labor and materials they had expended on it. They also contend

that this is so, irrespective of any intervening rights of third parties.

When the petitioners had made a contract under seal with Burgess, even if it were possible to hold, on account of any relation of agency which Burgess may have sustained to Williams, that Williams was responsible thereon, which we are not prepared to say, it certainly is not possible to hold, when the contract under seal has been fully performed, that Williams must be implied to have entered into an entirely distinct contract, by which an entirely different consideration was to be paid for the work and materials provided by the petitioners. Whatever remedies the petitioners may have against Williams for the deceit by which they were induced to enter into the contract with Burgess, or by which they were induced, even after their suspicions were aroused, to continue to perform it, the law cannot imply that Williams contracted thereby to pay them the money for their labor and materials, instead of delivering the notes, which was the contract price therefor.

In considering the damages which the petitioners have sustained by the fraudulent device of Williams, it may be proper to consider how much his land was increased by the value of the labor and materials which the petitioners were induced to place upon it; but this is quite different from a contract on his part to pay for it. His fraud cannot make a contract on his part to do that which neither he nor Burgess ever promised. Williams was not an actor in the transaction, and made no contract. If any lien can be maintained against the property of Williams, it must be upon the ground that the petitioners had performed and furnished labor upon it with his knowledge and consent. But no lien attaches for materials furnished, unless the person furnishing the same, before so doing, gives notice in writing to the owner of the property to be affected by the lien, if such owner is not the purchaser of the materials, that he intends to claim such lien. Pub. Sts. c. 191, §§ 1-3. Although the petitioners knew that Williams was the owner of the property while they were performing their contract, no such notice was given to him, and he certainly was not the purchaser of the materials. If it is possible to interpret the account filed as specifying the sums due for labor and those for materials, and it is somewhat difficult

to do so, at the trial it appeared that, while under the contract materials of various kinds were to be and were furnished, no evidence was offered of their price or value, or of the amount or quality used, or of the amount or value of the labor furnished. It is well established, that, where the two classes of charges for labor and for materials are so mingled, the contract being entire, that they cannot be determined respectively, there is no lien for either. *Gogin* v. *Walsh*, 124 Mass. 516. *Clark* v. *Kingsley*, 8 Allen, 543.

At the trial, no debt could have been found to be due on the contract under seal, the petitioners having then formally abandoned and rescinded it, and further, there was no default in the performance thereof, all the notes having been tendered. Nor could any debt have been found to be due for specific labor or materials, as they were not distinguishable. Nor was it competent to establish a lien for the amount in which the land had been enhanced in value, as the statute makes no provision therefor.

For the reasons above stated, a lien cannot be maintained for the item of putting in the water. There was no evidence as to what the labor or what the materials, separately, were worth; nor is there any statement of this item in the petition.

The remarks we have made render it perhaps superfluous to consider especially the claim of the petitioners to establish a lien, as against the rights of Mrs. Cotton, to whom this land was mortgaged in good faith on her part, and for full consideration; but there is an independent ground in relation to her claim, which is decisive in favor of its validity against the lien which the petitioners seek to assert. The petitioners were acting under their written contract when Mrs. Cotton's rights accrued. Even if the contract they had made with Burgess was voidable, it was not void, and they had made no election to avoid it. Mrs. Cotton's rights accrued while it was still in force; and the subsequent acts of the petitioners, whatever might be their effect on the rights of Burgess or Williams, could not diminish hers. When, under a contract, no lien exists, its rescission cannot create one against the rights of innocent third parties which may have intervened while it was still in force. Mrs. Cotton had no knowledge of the frauds of Williams

or Burgess, or of any agency of one for the other. Upon the same principle on which it has been held that a *bona fide* purchaser of a chattel from a fraudulent vendee, before rescission, acquires a good title against the defrauded vendor, a person who honestly advances her money upon a mortgage of real estate, upon which there is no lien by the then existing contract, cannot be prejudiced by a rescission of the contract, even if, as against other parties, such rescission might operate to create a lien.

*Petition dismissed.*